14 CV 2136

CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
708 Third Avenue – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

JOSE HUERTA, CESAR FLORES, and ISRAEL MORENO,
on behalf of themselves and others similarly situated,

         Plaintiffs,

   -against-

YOGI KRUPA 1061 INC. d/b/a DELITERIA,
GOOD NATURE 1045 INC. d/b/a GOOD NATURE DELI,
BHARATKUMAR PATEL, MAYANKI PATEL, TEJAS PATEL,
NIRAV PATEL, and NICK PATEL,

         Defendants.

------------------------------------------------------------------------X

Case No.

FLSA COLLECTIVE
ACTION and RULE
23 CLASS ACTION
COMPLAINT

**Jury Trial
Demanded**

   Plaintiffs JOSE HUERTA, CESAR FLORES, and ISRAEL MOENO (hereinafter,

"Plaintiffs"), on behalf of themselves and other similarly situated employees, by and

through their undersigned attorneys, Cilenti & Cooper, PLLC, file this Complaint against

defendants YOGI KRUPA 1061 INC. d/b/a DELITERIA ("DELITERIA"), GOOD

NATURE 1045 INC. d/b/a GOOD NATURE DELI ("GOOD NATURE DELI")

(collectively, the "Corporate Defendants"), BHARATKUMAR PATEL, MAYANKI

PATEL, TEJAS PATEL, NIRAV PATEL, and NICK PATEL, (collectively, the

"Individual Defendants") (the Corporate Defendants and Individual Defendants are

collectively referred to as "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), they are entitled to recover from the Defendants: (a) unpaid minimum wages; (b) unpaid overtime compensation, (c) unpaid misappropriated tips; (d) liquidated damages, (e) prejudgment and post-judgment interest; and (f) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from the Defendants: (a) unpaid minimum wages; (b) unpaid overtime compensation; (c) unpaid "spread of hours" premium for each day they worked a shift in excess of ten (10) hours; (d) unpaid misappropriated tips; (e) liquidated damages and civil penalties pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act; (f) prejudgment and post-judgment interest; and (g) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Plaintiffs are each residents of Bronx County, New York.

6.    Defendant DELITERIA is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 1061 Second Avenue, New York, New York 10022.

7.    Upon information and belief, defendant DELITERIA was formerly incorporated as West Front Andrew Corp., through a prior owner by the name of Bulk Hong.

8.    Whether formerly incorporated as West Front Andrew Corp., or under its current corporate name of Yogi Krupa 1061 Inc., the business located at 1061 Second Avenue has always operated and done business as "Deliteria."

9.    The whereabouts of Mr. Bulk Hong are unknown.

10.    Defendant GOOD NATURE is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 1045 Second Avenue, New York, New York 10022.

11.    Upon information and belief, defendant GOOD NATURE was formerly incorporated as Good Nature Inc., through a prior owner by the name of Sun Y. Kim.

12.    Whether formerly incorporated as Good Nature Inc., or under its current corporate name of Good Nature 1045 Inc., the business located at 1045 Second Avenue has always operated and done business as "Good Nature Deli."

13.    The whereabouts of Mr. Sun Y. Kim are unknown.

14.    Defendants, BHARATKUMAR PATEL and MAYANKI PATEL, who are upon information and belief themselves related, are owners, shareholders, officers, directors, supervisors, managing agents, and proprietors of DELITERIA and GOOD NATURE who actively participated, and continue to actively participate in the day-to-

day operations of DELITERIA and GOOD NATURE and acted intentionally and maliciously and are employers pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with DELITERIA and GOOD NATURE.

15.     Defendants, TEJAS PATEL and NIRAV PATEL, who are upon information and belief themselves related, and also related to defendants BHARATKUMAR PATEL and MAYANKI PATEL, are officers, directors, supervisors, and/or managing agents of DELITERIA who actively participated, and continue to actively participate in the day-to-day operations of DELITERIA and acted intentionally and maliciously and are employers pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with DELITERIA.

16.     Defendant, NICK PATEL, who is upon information and belief related to defendants BHARATKUMAR PATEL, MAYANKI PATEL, TEJAS PATEL and NIRAV PATEL, is an officer, director, supervisor, and/or managing agent of GOOD NATURE who actively participated, and continues to actively participate in the day-to-day operations of GOOD NATURE and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with GOOD NATURE.

17.    The Individual Defendants each exercised control over the terms and conditions of Plaintiffs' employment in that they had and have had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, including Plaintiffs, and (v) otherwise affect the quality of the employees' employment.

18.    The Individual Defendants are present on the premises of DELITERIA and GOOD NATURE on a daily basis, and actively supervise the work of the employees, and mandate that all issues concerning the employees' employment – including hours worked and pay received – be authorized or approved by them.

19.    Upon information and belief, at all times relevant to the allegations in this Complaint, DELITERIA and GOOD NATURE, both individually and jointly were, and continue to be, "enterprises engaged in commerce" within the meaning of the FLSA in that they (i) have and have had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) have and have had an annual gross volume of sales of not less than $500,000.

20.    Defendants employed Plaintiffs in New York County, New York to work as non-exempt grill cooks, deli persons/sandwich makers, stock persons, cashiers, kitchen helpers/food preparers, and delivery persons for Defendants' restaurants/delicatessens.

21.    The work performed by Plaintiffs was directly essential to the businesses operated by Defendants.

22.    Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

23. Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

24. Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned "spread of hours" premium in direct contravention of the New York Labor Law.

25. Defendants knowingly and willfully misappropriated from Plaintiffs their lawfully earned tips in direct contravention of the FLSA and New York Labor Law.

26. Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

27. Defendants BHARATKUMAR PATEL and MAYANKI PATEL hired employees to work as managers and supervisors to participate in the day-to-day operation of DELITERIA and GOOD NATURE.

28. For instance, defendants BHARATKUMAR PATEL and MAYANKI PATEL hired defendants TEJAS PATEL and NIRAV PATEL to work as managers and supervisors of DELITERIA.

29. Similarly, defendants BHARATKUMAR PATEL and MAYANKI PATEL hired defendant NICK PATEL to work as a manager and supervisor of GOOD NATURE.

30. Defendants BHARATKUMAR PATEL and MAYANKI PATEL actively participate in the day-to-day operation of DELITERIA and GOOD NATURE. For instance, defendants BHARATKUMAR PATEL and MAYANKI PATEL personally supervise and direct the work of the employees, including the managers who directly

supervise the employees, and instruct them how to perform their jobs, and correct and/or reprimand them for any errors made.

31.    Defendants BHARATKUMAR PATEL and MAYANKI PATEL authorize defendants TEJAS PATEL, NIRAV PATEL, and NICK PATEL, to also actively participate in the day-to-day operation of DELITERIA and GOOD NATURE.

32.    Although defendants BHARATKUMAR PATEL and MAYANKI PATEL provide defendants TEJAS PATEL, NIRAV PATEL, and NICK PATEL with authority to effectively run the day-to-day operations of DELITERIA and GOOD NATURE, including the hiring and firing of employees, defendants BHARATKUMAR PATEL and MAYANKI PATEL must approve all crucial business decisions.  This includes decisions concerning the number of hours employees work, the amount of pay that employees are entitled to receive, and whether employees are entitled to a pay raise and, if so, the amount of the raise.

33.    Upon information and belief, defendants DELITERIA and GOOD NATURE are associated as a single enterprise, utilizing Plaintiffs and other similarly situated employees in a fungible and interchangeable manner as workers in the businesses operated by the Defendants.

34.    Upon information and belief, defendants DELITERIA and GOOD NATURE each engage in related activities, namely, providing restaurant services to the general public for profit. Defendants, DELITERIA and GOOD NATURE, shared Plaintiffs and other similarly situated employees, acted in the interest of each other with respect to employees, paid their employees by the same plan or scheme, and are themselves under common control.

35.    Upon information and belief, defendants, DELITERIA and GOOD NATURE, are controlled by the same owner, or owner group, operating as a unified operation and, upon information and belief, each provide mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent of each other and, therefore, may be treated as a single enterprise.

36.    The performance of Plaintiffs' job responsibilities, as well as the responsibilities of other similarly situated employees, was and continues to be controlled by one person or group of persons, corporations, or other organizational units acting together.

37.    Defendants, DELITERIA and GOOD NATURE, share a common commercial business purpose, namely, providing restaurant services to the general public for profit.

38.    Defendants DELITERIA and GOOD NATURE shared control of Plaintiffs and the performance of Plaintiffs' job responsibilities.

39.    Upon information and belief, defendant DELITERIA, which was first incorporated on or about July 5, 2012, is the successor to non-party West Front Andrew Corp.

40.    Upon information and belief, as successor, defendant DELITERIA acquired substantial assets of non-party West Front Andrew Corp., and has continued, without interruption or substantial change, the business operations of the predecessor non-party West Front Andrew Corp.

41.    To the extent defendant DELITERIA is the successor to non-party West Front Andrew Corp., it is liable for the debts and liabilities of its predecessor non-party West Front Andrew Corp.

42.    Upon information and belief, defendant GOOD NATURE, which was first incorporated on or about August 7, 2013, is the successor to non-party Good Nature, Inc.

43.    Upon information and belief, as successor, defendant GOOD NATURE acquired substantial assets of non-party Good Nature, Inc., and has continued, without interruption or substantial change, the business operations of the predecessor non-party Good Nature, Inc.

44.    To the extent defendant GOOD NATURE is the successor to non-party Good Nature, Inc., it is liable for the debts and liabilities of its predecessor non-party Good Nature, Inc.

45.    In or about 2008, Plaintiff JOSE HUERTA began employment at DELITERIA to work as a non-exempt grill cook and deli person/sandwich maker for Defendants' twenty-four (24) hour restaurant/delicatessen known as Deliteria, located at 1061 Second Avenue, New York, New York.

46.    Plaintiff continuously worked for the Defendants in such capacities until on or about February 10, 2014.

47.    During the course of Plaintiff's employment by Defendants, he worked over forty (40) hours per week.

48.    From the beginning of his employment and continuing through approximately December 2010, Plaintiff worked six (6) days a week, and his work schedule consisted of twelve (12) hours per day, from 7:00 a.m. until 7:00 p.m.

49.    Beginning in or about January 2011 and continuing through approximately August 2013, Plaintiff worked five (5) days a week, and his work schedule consisted of twelve (12) hours per day, from 7:00 a.m. until 7:00 p.m.

50.    Beginning in or about September 2013 and continuing through approximately November 2013, Plaintiff worked six (6) days a week, and his work schedule consisted of twelve (12) hours per day, from 7:00 a.m. until 7:00 p.m.

51.    Beginning in or about December 2013 and continuing through the remainder of his employment on or about February 10, 2014, Plaintiff worked six (6) days a week, and his work schedule consisted of ten (10) hours per day on Monday, Wednesday, and Thursday, from 7:00 a.m. until 3:00 p.m.; and twelve (12) hours per day on Tuesday, Friday, and Saturday, from 7:00 a.m. until 7:00 p.m.

52.    Throughout the entirety of his employment, Plaintiff did not receive proper overtime compensation.  From the beginning of his employment and continuing through approximately December 2008, Plaintiff was paid, in cash, at the rate of $8 per hour straight time for all hours worked, and worked seventy-two (72) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

53.    Beginning in or about January 2009 and continuing through approximately December 2009, Plaintiff was paid, in cash, at the rate of $9 per hour straight time for all hours worked, and worked seventy-two (72) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

54.     Beginning in or about January 2010 and continuing through approximately December 2010, Plaintiff was paid, in cash, at the rate of $10 per hour straight time for all hours worked, and worked seventy-two (72) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

55.     Beginning in or about January 2011 and continuing through approximately August 2013, Plaintiff was paid, in cash, at the rate of $10 per hour straight time for all hours worked, and worked sixty (60) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

56.     Beginning in or about September 2013 and continuing through approximately November 2013, Plaintiff was paid, in cash, at the rate of $10 per hour straight time for all hours worked, and worked seventy-two (72) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

57.     Beginning in or about December 2013 and continuing through the remainder of his employment on or about February 10, 2014, Plaintiff was paid, in cash, at the rate of $10 per hour straight time for all hours worked, and worked sixty-six (66) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

58.     In or about September 2011, Plaintiff CESAR FLORES began employment at DELITERIA to work as a non-exempt deli person/sandwich, stock

person, and cashier for Defendants' twenty-four (24) hour restaurant/delicatessen known as Deliteria, located at 1061 Second Avenue, New York, New York.

59.    Plaintiff continuously worked for the Defendants in such capacities until in or about May 2012.

60.    Plaintiff returned to work for the Defendants at Deliteria on or about December 10, 2012.

61.    In or about March 2013 and continuing through approximately May 2013, Plaintiff worked the morning shift at Deliteria and the evening shift at Good Nature Deli, before returning to work solely at Deliteria between June 2013 and the end of his employment on or about February 12, 2014.

62.    During the course of Plaintiff's employment by Defendants, he worked over forty (40) hours per week.

63.    From the beginning of his employment and continuing through approximately May 2012, Plaintiff worked six (6) days a week, and his work schedule consisted of twelve (12) hours per day, from 8:00 a.m. until 8:00 p.m.

64.    During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid $550 per week straight time for all hours worked, and worked seventy-two (72) hours per week (for a regular rate of $7.64 per hour).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

65.    Upon returning to work for the Defendants on or about December 10, 2012 and continuing through approximately February 2013, Plaintiff worked six (6) days

12

a week, and his work schedule consisted of six (6) hours per day, from 7:00 a.m. until

1:00 p.m.

66.     During this period, Plaintiff was not paid proper overtime compensation.

During this period, Plaintiff was paid $7.60 per hour straight time for all hours worked,

and worked thirty-six (36) hours per week.  Work performed above forty (40) hours per

week was not paid at the statutory rate of time and one-half as required by state and

federal law.

67.     Beginning in or about March 2013 and continuing through approximately

November 2013, Plaintiff worked six (6) days a week, and his work schedule consisted of

eight (8) hours per day at Deliteria, from 7:00 a.m. until 3:00 p.m.; and four (4) hours per

day at Good Nature Deli, from 3:00 p.m. until 7:00 p.m.

68.     During this period, Plaintiff was not paid proper overtime compensation.

During this period, Plaintiff was paid $7.60 per hour straight time for all hours worked,

and seventy-two (72) hours per week.  Work performed above forty (40) hours per week

was not paid at the statutory rate of time and one-half as required by state and federal

law.

69.     Beginning in or about December 2013 and continuing through the

remainder of his employment on or about February 12, 2014, Plaintiff worked six (6)

days a week solely at Deliteria, and his work schedule consisted of twelve (12) hours per

day on Monday, Wednesday, and Friday, from 7:00 a.m. until 7:00 p.m.; and eight (8)

hours per day on Tuesday, Thursday, and Saturday, from 7:00 a.m. until 3:00 p.m.

70.     During this period, Plaintiff was not paid proper overtime compensation.

During this period, Plaintiff was paid $460 per week straight time for all hours worked,

and sixty (60) hours per week (for a regular rate of $7.67 per hour). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

71.    In or about November 2006, Plaintiff ISRAEL MORENO began employment at DELITERIA to work as a non-exempt food preparer/kitchen helper and delivery person for Defendants' twenty-four (24) hour restaurant/delicatessen known as Deliteria, located at 1061 Second Avenue, New York, New York.

72.    In or about 2011, Plaintiff's job duties expanded to include that of a non-exempt deli person/sandwich maker and cashier.

73.    Plaintiff continuously worked for the Defendants in such capacities until on or about March 10, 2014.

74.    During the course of Plaintiff's employment by Defendants, he worked over forty (40) hours per week.

75.    Throughout the entirety of his employment, Plaintiff worked six (6) days a week, and his work schedule consisted of twelve (12) hours per day, from 7:00 a.m. until 7:00 p.m.

76.    From the beginning of his employment and continuing through approximately 2011, Plaintiff did not receive proper overtime compensation. During this period, Plaintiff was paid, in cash, at the rate of $600 per week straight time for all hours worked, and worked seventy-two (72) hours per week (for a regular rate of pay of $8.33 per hour). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

77.    Beginning in or about 2012 and continuing through the remainder of his employment on or about March 10, 2014, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid, in cash, at the rate of $500 per week straight time for all hours worked, and worked seventy-two (72) hours per week (for a regular rate of $6.95 per hour).   Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

78.    In addition to eat-in restaurant services, Defendants also provide *a la carte* breakfast, lunch and dinner menus for door-to-door delivery that is made upon request. Upon information and belief, customers have the option of submitting their *a la carte* food order online through use of www.seamlessweb.com, www.grubhub.com and other similar online-based food ordering websites, which orders are typically paid for by credit card, whereupon Defendants receive the customer's order electronically and proceed to prepare the food order and provide delivery to the customer's residence or place of business.

79.    Defendants improperly and unlawfully retained, and continue to retain, a certain portion of the tips afforded to their tipped employees, including Plaintiff ISRAEL MORENO, for all deliveries made on orders received through such online-based food ordering websites.

80.    Defendants are not entitled to take any "tip credits" under federal or state law because they: (i) failed to properly provide notice to all tipped employees, including Plaintiffs, that Defendants were taking a "tip credit," (ii) failed to provide proper wage statements informing tipped employees, including Plaintiffs, of the amount of "tip credit"

taken for each payment period, (iii) failed to keep proper records showing the amount of tips received each day and each week by tipped employees, and (iv) misappropriated tips from their tipped employees, and (v) failed to pay tipped employees the proper amount of minimum wages afforded to tipped employees, thereby rendering the "tip credit" inapplicable.

81.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs and other similarly situated employees.

82.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

83.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees "spread of hours" premium for each day that they worked a shift in excess of ten (10) hours, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

84.    Defendants knowingly and willfully operated their business with a policy of misappropriating and retaining the tips of Plaintiff ISRAEL MORENO and other similarly situated employees in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

85.     At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, the Defendants failed to maintain accurate and sufficient time and pay records.

## COLLECTIVE ACTION ALLEGATIONS

86.     Plaintiffs bring this action individually and as class representatives on behalf of themselves and all other current and former non-exempt employees who have been or were employed by Defendants since March 26, 2011 to the entry of judgment in this case (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage, less than time and one-half for all hours worked in excess of forty (40) hours per workweek, or had their tips misappropriated (the "Collective Action Members").

87.     Upon information and belief, the collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

88.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the

17

fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

89.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

90.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

91.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a.    Whether the Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

b.    Whether the Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Collective Action Members;

c.    What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;

d.    Whether the Defendants failed to pay Plaintiffs and the Collective Action Members statutory minimum wages;

e.    Whether the Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.    Whether the Defendants misappropriated the tips of Plaintiffs and the Collective Action Members in violation of the FLSA;

g.    Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

h.    Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

92.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

93.    Plaintiffs and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

94.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

95.     Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by Defendants at any time since March 26, 2008 to the entry of judgment in this case (the "Class Period") who were non-exempt employees within the meaning of the New York Labor Law and have not been paid statutory minimum wages, overtime compensation, "spread of hours" premium, or had their tips misappropriated in violation of the New York Labor Law (the "Class").

96.     Upon information and belief, the persons in the Class identified herein are so numerous that joinder of all members is impracticable.  Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of the Defendants, the Class consists of all non-managerial current and former employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

97.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

98.     The Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

99.     Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

100.     Plaintiffs will fairly and adequately protect the interests of the NY Class members.  Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that they must consider the interests of the Class and Collective Action Members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class or Collective Action Members.

101.     Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members.  Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and they understand that they may be called upon to testify in depositions and at trial.

102.     Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

103.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.      Whether the Defendants employed Plaintiffs and the Class members within the meaning of the New York Labor Law;

b.      Whether the Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Class members;

c.      What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;

d.      Whether the Defendants failed to pay Plaintiffs and the Collective Action Members statutory minimum wages;

e.      Whether the Defendants failed to pay Plaintiffs and the Class members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

f.      Whether the Defendants failed to pay Plaintiffs and the Class members "spread of hours" premium for each day they worked a shift in excess of ten (10) hours, in violation of the New York Labor Law and the regulations promulgated thereunder;

g.      Whether the Defendants misappropriated tips from Plaintiffs and members of the Class, in violation of the New York Labor Law and the regulations promulgated thereunder;

h.      Whether the Defendants' violations of the New York Labor Law are willful as that terms is used within the context of the New York Labor Law; and,

       i.        Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs, attorneys' fees, and costs and disbursements.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

104.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "103" of this Complaint as if fully set forth herein.

105.    At all relevant times, upon information and belief, the Corporate Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

106.    At all relevant times, Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA.

107.    Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.

108.    Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and the Collective Action Members for hours worked.

109.    Defendants willfully failed to pay Plaintiffs and the Collective Action Members minimum wages in the lawful amount for hours worked.

110.    Plaintiffs and the Collective Action Members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

111.    Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

112.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

113.    The FLSA mandates that wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the FLSA will not be met where the employee kicks-back directly or indirectly to the employer the whole or part of the wage delivered to the employee. 29 C.F.R. § 531.35.

114.    Defendants knowingly and willfully violated the FLSA by misappropriating tips from certain Plaintiffs and the Collective Action members.

115.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the Collective Action Members at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, and by misappropriating their tips, when they knew or should have known such was due and that

24

non-payment of minimum wages, overtime compensation, and tips would financially injure Plaintiffs and the Collective Action Members.

116.    As a result of the Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

117.    Defendants failed to properly disclose or apprise Plaintiffs and the Collective Action Members of their rights under the FLSA.

118.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

119.    Due to the reckless, willful and unlawful acts of the Defendants, Plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime compensation, unpaid misappropriated tips, an equal amount as liquidated damages, and prejudgment interest thereon.

120.    Plaintiffs and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

121.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "120" of this Complaint as if fully set forth herein.

122.    At all relevant times, the Defendants employed Plaintiffs and the Class members within the meaning of New York Labor Law §§ 2 and 651.

123.    Defendants knowingly and willfully violated the rights of Plaintiffs and members of the Class by failing to pay them minimum wages in the lawful amount for hours worked.

124.    Defendants knowingly and willfully violated the rights of Plaintiffs and the Class members by failing to pay Plaintiffs and the Class members overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

125.    Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours.  New York State Department of Labor Regulations §§ 137-1.7; 146-1.6.

126.    Defendants knowingly and willfully violated the rights of Plaintiffs and the Class members by failing to pay "spread of hours" premium to Plaintiffs and the Class members for each day they worked a shift in excess of ten (10) hours pursuant to New York State Department of Labor Regulations.

127.    The New York Labor Law prohibits an employer from making any deductions from wages, other than standard deductions for taxes.  N.Y. Lab. Law § 193.

128.    The New York Labor Law also prohibits employers from receiving "kickbacks" from their employees.  N.Y. Lab. Law § 198-b.

129.    Defendants regularly obtained kickbacks from their employees by demanding and retaining gratuities from Plaintiffs and Class members, in violation of the New York Labor Law. N.Y. Lab. Law § 196-d.

130.    Defendants failed to properly disclose or apprise Plaintiffs and the Class members of their rights under the New York Labor Law.

131.    Defendants failed to furnish Plaintiffs and the Class members with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations §§ 137-2.2, 146-2.3.

132.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

133.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations §§ 137-2.1, 146-2.1.

134.    At the time of their hiring, Defendants failed to notify Plaintiffs and the Class members of their rates of pay and their regularly designated payday, in contravention of New York Labor Law § 195(1).

135.    Due to the Defendants' New York Labor Law violations, Plaintiffs and the Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium, unpaid

misappropriated tips, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

136.    Plaintiffs and the Class members are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiffs, JOSE HUERTA, CESAR FLORES, and ISRAEL MORENO, on behalf of themselves and all similarly situated Collective Action Members and Class members, respectfully requests that this Court grant the following relief:

(a)    An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)    An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c)    An award of unpaid "spread of hours" premium due under the New York Labor Law;

(d)    An award of unpaid misappropriated tips in violation of federal and state law;

(e)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages, overtime compensation, and misappropriated tips pursuant to 29 U.S.C. § 216;

(f)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages, overtime compensation, "spread of hours" premium, and

misappropriated tips pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(g)    An award of civil penalties pursuant to the New York State Wage Theft Prevention Act;

(h)    An award of prejudgment and post-judgment interest;

(i)    An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(j)    Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: New York, New York
      March 26, 2014

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiffs*
708 Third Avenue – 6th Floor
New York, NY 10017
Telephone  (212) 209-3933
Facsimile   (212) 209-7102

By: _____
    Giustino (Justin) Cilenti (GC2321)

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, _Jose Huerta_ , am an employee formerly employed by _Deliteria_ , and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_02/10_ , 2014

_Jose Huerta_

Sworn to before me this _12th_
day of _February_ 2014.

_____
Notary Public

GIUSTINO CILENTI
Notary Public, State of New York
No. 02CI6240824
Qualified in New York County
Commission Expires May 9, 2015

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, _Cesar Flores_ , am an employee formerly employed by

_Deliteria_ , and/or related entities.  I consent to be a plaintiff in the

above-captioned action to collect unpaid wages.

Dated: New York, New York
_2/14_ , 2014

_[signature]_

Sworn to before me this _14th_
day of _february_ 2014.

_[signature]_
Notary Public

GIUSTINO CILENTI
Notary Public, State of New York
No. 02CI6240824
Qualified in New York County
Commission Expires May 9, 2015

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, _Israel Moreno_, am an employee formerly employed by _Deliteria_, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_02 / 12_, 2014

_____

Sworn to before me this _12th_
day of _february_ 2014.

_____
Notary Public

GIUSTINO CILENTI
Notary Public, State of New York
No. 02CI6240824
Qualified in New York County
Commission Expires May 9, 2015